IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| INIOBONG EKPO,<br><br>    Plaintiff,<br><br>    v.<br><br>PLAYA MANAGEMENT USA, LLC, et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:21-CV-2089-TWT |

**OPINION AND ORDER**

This is a personal injury action. It is before the Court on Defendant Hyatt Corporation's Motion to Dismiss [Doc. 22], Defendant Playa Management USA, LLC's Motion to Dismiss [Doc. 23], Defendant Playa Hall Jamaican Resort Limited's Motion to Dismiss [Doc. 24], and Hyatt Ziva's Motion to Dismiss [Doc. 25]. For the reasons set forth below, Defendant Hyatt Corporation's Motion to Dismiss [Doc. 22] is DENIED, Defendant Playa Management USA, LLC's Motion to Dismiss [Doc. 23] is DENIED, Defendant Playa Hall Jamaican Resort Limited's Motion to Dismiss [Doc. 24] is GRANTED, and Hyatt Ziva's Motion to Dismiss [Doc. 25] is GRANTED.

## I. Background

The Court accepts the facts alleged in the Complaint as true for purposes of the Defendants' Motions to Dismiss. *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019). On May 21, 2019, the Plaintiff Iniobong Ekpo injured his great right toe while playing beach volleyball at the Hyatt Ziva

Rose Hall Resort located in Montego Bay, Jamaica. (Compl. ¶¶ 18-20.) He was a guest at the resort on that date and joined the beach volleyball game "at the constant request and instigation" of the resort's employees. (*Id.* ¶¶ 17-18.) The Plaintiff allegedly became aware of Rose Hall Resort through internet advertisements, emails, and postal mail from Defendant Hyatt Corporation and Defendant Playa Management USA, LLC. (*Id.* ¶ 16.)

At all times relevant to the Complaint, Hyatt Corporation owned and operated Defendant Hyatt Ziva; Playa Management owned and operated Defendant Playa Hall Jamaican Resort Limited; and Hyatt Corporation and Playa Management owned and operated Rose Hall Resort through their respective subsidiaries. (*Id.* ¶¶ 11-13.) Hyatt Corporation is a for-profit corporation organized under Delaware law, with its principal office in Illinois, that is authorized to conduct business in Georgia. (*Id.* ¶ 4.) Playa Management is a limited liability company organized under Delaware law, with its principal office in Florida, that is authorized to conduct business in Georgia. (*Id.* ¶ 2.) Hyatt Ziva and Playa Hall are both foreign, profit-generating companies organized under Jamaica law. (*Id.* ¶¶ 6-7.) The Defendants now move to dismiss the single claim for negligence against them for lack of personal jurisdiction.

## II. Legal Standard

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff has the burden of establishing a prima facie case by

presenting enough evidence to withstand a motion for directed verdict." *United States ex rel. Bibby v. Mortgage Invs. Corp.*, 987 F.3d 1340, 1356 (11th Cir. 2021). In evaluating a plaintiff's case, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). Where the defendant contests the allegations in the complaint through affidavits, "the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). "And where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must draw all reasonable inferences in the plaintiff's favor." *Mortgage Invs.*, 987 F.3d at 1356 (quotation marks omitted).

### III. Discussion

A federal court sitting in diversity undertakes a two-step inquiry to determine whether it has personal jurisdiction over a nonresident defendant: the exercise of jurisdiction must (1) be appropriate under the forum state's long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257-58 (11th Cir. 2010). "When a federal court uses a state long-arm statute, because the extent of the statute is

governed by state law, the federal court is required to construe it as would the state's supreme court." *Id.* at 1258 (quotation marks omitted). Thus, this Court must interpret and apply Georgia's long-arm statute in the same manner as the Georgia Supreme Court. The statute, codified at O.C.G.A. § 9-10-91, confers specific personal jurisdiction over an out-of-state defendant if, among other things, he "[t]ransacts any business within [Georgia][.]" O.C.G.A. § 9-10-91(1); *see also Cooper Tire & Rubber Co. v. McCall*, 312 Ga. 422, 429 (2021).

If a state's long-arm statute is satisfied, the next step is to assess personal jurisdiction under constitutional due process principles. A court may exercise either general or specific jurisdiction over a foreign corporation: "[g]eneral jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated, while specific jurisdiction is founded on a party's activities in the forum that are related to the cause of action alleged in the complaint[.]" *Stubbs*, 447 F.3d at 1360 n. 3 (citation omitted). Under either scenario, a court must ensure that "the defendant has 'certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (alteration and quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The minimum-contacts inquiry "ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the 'random, fortuitous,

or attenuated' contacts it makes by interacting with other persons affiliated with the state." *Waite*, 901 F.3d at 1312 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

"Even where neither the forum state's long-arm statute nor the due process minimum contacts analysis is satisfied, a court may exercise personal jurisdiction over a party if the party consents. 'A litigant may give express or implied consent to the personal jurisdiction of the court.'" *Id.* (alteration omitted) (quoting *Burger King*, 471 U.S. at 472 n.14); *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) ("[U]nlike subject matter jurisdiction, a party may simply consent to a court's exercise of personal jurisdiction[.]"); *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir. 1990) ("Consent is the other traditional basis of jurisdiction, existing independently of long-arm statutes."). For example, "parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction." *Burger King*, 471 U.S. at 472 n.14. "Where such forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process." *Id.* (quotation marks and citation omitted).

## A. Hyatt Corporation and Playa Management

First, the Plaintiff contends that Hyatt Corporation and Playa Management effectively consented to general personal jurisdiction in Georgia by registering to do business in the state. (Pl.'s Br. in Opp'n to Defs.' Mots. to

Dismiss, at 7-10.) According to the Plaintiff, because these Defendants are authorized to transact business and have registered offices and agents in Georgia, they are residents for personal jurisdiction purposes and fall outside the scope of the long-arm statute. (*Id.* at 8-9.) In response, the Defendants argue that the "consent-by-registration" theory of general jurisdiction, as it is widely termed, has been overruled by the Supreme Court's modern jurisdiction decisions. (Reply Br. in Supp. of Hyatt Corp.'s, Playa Mgmt.'s, & Playa Hall's Mots. to Dismiss, at 2-4.)

In *Allstate Ins. Co. v. Klein*, 262 Ga. 599, 601 (1992), the Georgia Supreme Court held that Georgia courts may exercise general jurisdiction over out-of-state corporations that are authorized to do or transact business in the state at the time a claim arises. The court observed that Georgia's long-arm statute applies solely to "nonresident" defendants, and that a nonresident is defined in the corporate context as "a corporation which is not organized or existing under the laws of this state *and is not* authorized to do or transact business in this state at the time a claim or cause of action arises." *Id.* at 600-01 (alteration omitted) (emphasis in original) (quoting O.C.G.A. § 9-10-90). By extension, the court reasoned that a foreign corporation is considered a resident and "may sue or be sued to the same extent as a domestic corporation" when it is registered in Georgia. *Id.* at 601. Under *Klein*, the state's long-arm statute does not restrict a plaintiff from suing a registered corporation in Georgia, even if his cause of action does not arise out of the defendant's

6

activities within the state. *See id.*

Nearly three decades later, the Georgia Supreme Court granted certiorari to reconsider *Klein*'s general jurisdiction holding in *Cooper Tire*, 312 Ga. 422. There, the defendant Cooper Tire was incorporated in Delaware, maintained its principal place of business in Ohio, and was authorized to transact business in Georgia. Cooper Tire argued that, as a nonresident corporation with minimal contacts in Georgia, it was not subject to the personal jurisdiction of Georgia courts under today's due process limitations. *See id.* at 423. The Georgia Supreme Court disagreed, tracing the evolution of the Supreme Court's due process jurisprudence beginning with *Pennoyer v. Neff*, 95 U.S. 714 (1878). The focus in *Pennoyer* was on the defendant's physical presence in a state: that is, "a state's jurisdiction reached only as far as its geographic boundaries." *Brown*, 814 F.3d at 631. Under that framework, the Georgia Supreme Court explained that "due process of law required either the 'voluntary appearance' of the out-of-state defendant or personal service of process upon the out-of-state defendant to bring the defendant within the state's jurisdiction and allow the defendant to be 'personally bound by any judgment rendered.'" *Cooper Tire*, 312 Ga. at 424 (quoting *Pennoyer*, 95 U.S. at 733-34).

The court turned next to *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917), a *Pennoyer*-era decision which sanctioned general corporate jurisdiction by

7

consent. In that case, a Missouri law required out-of-state companies, as part of their business license, to file a power of attorney agreeing that service on the insurance superintendent satisfied personal service. The defendant, a Pennsylvania insurance company, was sued and served in Missouri based on a previously executed power of attorney there. Affirming the Missouri court's exercise of personal jurisdiction over the defendant, the Supreme Court held:

> The construction of the Missouri statute thus adopted hardly leaves a constitutional question open. The defendant had executed a power of attorney that made service on the superintendent the equivalent of personal service. If by a corporate vote it had accepted service in this specific case, there would be no doubt of the jurisdiction of the state court over a transitory action of contract. If it had appointed an agent authorized in terms to receive service in such cases, there would be equally little doubt. It did appoint an agent in language that rationally might be held to go to that length. The language has been held to go to that length [by the Missouri Supreme Court], and the construction did not deprive the defendant of due process of law even if it took the defendant by surprise, which we have no warrant to assert.

*Id.* at 95 (citation omitted). As the Georgia Supreme Court read *Pennsylvania Fire*, "where a state statute notifies an out-of-state corporation that by registering and appointing an agent for service of process in the state, the corporation has consented to general personal jurisdiction there, the corporation has not been deprived of the Fourteenth Amendment's guarantee of due process of law when it is sued in that state." *Cooper Tire*, 312 Ga. at 425.

But the traditional notions of due process have undergone a sea change since *Pennsylvania Fire* was decided more than a century ago. Take, in

particular, the Supreme Court's decisions in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), and *Daimler AG v. Bauman*, 571 U.S. 117 (2014). In *Goodyear*, the Court elaborated on the limits of general jurisdiction following its landmark *International Shoe* opinion, which shifted the due process inquiry away from *Pennoyer*'s territorial approach to the minimum contacts framework. *See Goodyear,* 564 U.S. at 923-25. The Court instructed that general jurisdiction exists over foreign corporations "to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them *essentially at home* in the forum State." *Id.* (emphasis added). By that standard, Goodyear's overseas subsidiaries were not subject to general jurisdiction in North Carolina, the Court held, merely because some of their tires had reached the state through the stream of commerce. *See id.* at 919-20.

Three years later, *Daimler* clarified that other than in exceptional cases, a corporation is "at home" for purposes of general jurisdiction in two forums: its place of incorporation and its principal place of business. *Daimler*, 571 U.S. at 137 & n.19. The Court reasoned that "[t]hose affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* The *Daimler* plaintiffs had advanced a rule that general jurisdiction exists in every state where a corporation engages in a substantial, continuous, and systematic course of business. *See id.* at 138. Disagreeing, the Court emphasized that "[a] corporation that operates in many

9

places can scarcely be deemed at home in all of them." *Id.* at 139 n.20. "Such exorbitant exercises of [general] jurisdiction," the majority concluded, "would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 139 (quotation marks omitted).

Even the Georgia Supreme Court has admitted that consent by registration is now "in tension" with the Supreme Court's restrictive view of general jurisdiction. *Cooper Tire*, 312 Ga. at 424. Still, it continues to regard *Pennsylvania Fire* as binding due process law since it has not been expressly overruled by *Goodyear* and its progeny. *See id.* at 432, 434. According to the Georgia Supreme Court, unlike *Pennsylvania Fire*, those later cases addressed whether an out-of-state corporation that has *not* consented to jurisdiction is subject to a state's general jurisdiction. *See id.* at 426-28. And indeed, the passing references to consent in *Daimler*, *Goodyear*, and even *International Shoe* lend some support to that distinction. *See, e.g.*, *Daimler*, 571 U.S. at 129 (describing a 1952 opinion as "the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum"); *Int'l Shoe*, 326 U.S. at 317 ("'Presence' in the state . . . has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given.").

10

Like the Georgia Supreme Court, many courts have struggled to square *Pennsylvania Fire* with the Supreme Court's recent jurisdiction jurisprudence. *See, e.g.*, *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 136 (4th Cir. 2020) ("[W]e find it difficult to reconcile the *Pennsylvania Fire* approach with the modern view of general jurisdiction expressed in the Supreme Court's recent cases."); *Gulf Coast Bank & Tr. Co. v. Designed Conveyor Sys., LLC*, 717 F. App'x 394, 397 (5th Cir. 2017) (questioning, without deciding, whether "*Pennsylvania Fire* may be one of the many cases that the Supreme Court has explicitly declared overruled by *International Shoe*"); *Brown*, 814 F.3d at 639 ("*Pennsylvania Fire* is now simply too much at odds with the approach to general jurisdiction adopted in *Daimler* to govern as categorically as [the plaintiff] suggests[.]"). The Supreme Court itself has advised that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." *Shaffner v. Heitner*, 433 U.S. 186, 212 (1977). And as a result, cases that were "decided in the era dominated by *Pennoyer*'s territorial thinking[] should not attract heavy reliance today." *Daimler*, 571 U.S. at 138 n.18.

Since *Daimler*, there has been a split among federal courts as to the constitutionality of consent-by-registration statutes. Some courts have upheld the statutes, concluding (as the Georgia Supreme Court did) that the Supreme Court has never overruled *Pennsylvania Fire* or personal jurisdiction by consent. *See, e.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, 2016 WL 1047996,

11

at *2 (D. Kan. Mar. 11, 2016) ("The Court does not agree, however, that the Supreme Court effectively overruled *Pennsylvania Fire* in *Daimler*. *Daimler* did not involve the issue of jurisdiction by consent."); *Otsuka Pharm. Co., Ltd. v. Mylan Inc.*, 106 F. Supp. 3d 456, 468 (D.N.J. 2015) ("Indeed, the Supreme Court has never explicitly overruled the holdings of [*Pennsylvania Fire* or *Robert Mitchell Furniture Co. v. Selden Breck Constr. Co.*, 257 U.S. 213 (1921)], and in the absence of such declaration, the Supreme Court directs the continued application of its precedents."). Others have struck down the statutes on the grounds that forcing companies to consent to jurisdiction wherever they do business would obliterate *Daimler*. *See, e.g.*, *In re Asbestos Prods. Liab. Litig. (No. VI)*, 384 F. Supp. 3d 532, 540-41 (E.D. Penn. 2019) ("[A] mandatory statutory regime purporting to confer consent to general jurisdiction in exchange for the ability to legally do business in a state is contrary to the rule in *Daimler* and, therefore, can no longer stand."); *AstraZeneca AB v. Mylan Pharms., Inc.*, 72 F. Supp. 3d 549, 556 (D. Del. 2014) ("In light of the holding in *Daimler*, the court finds that Mylan's compliance with Delaware's registration statutes—mandatory for *doing business* within the state—cannot constitute consent to jurisdiction, and the Delaware Supreme Court's decision in [*Sternberg v. O'Neil*, 550 A.2d 1105 (Del. 1988)] can no longer be said to comport with federal due process." (emphasis in original)). Some state high courts have also sought to avoid constitutional overreach by interpreting their business registration statutes not to confer

general jurisdiction over foreign corporations. *See, e.g.*, *Lanham v. BNSF Ry. Co.*, 939 N.W.2d 363, 371 (Neb. 2020) ("In light of the due process limits prescribed in *Goodyear* . . . and *Daimler* . . . we join the majority of jurisdictions and hold that a corporation's registration under § 21-19,152 does not provide an independent basis for the exercise of general jurisdiction."); *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 148 (Del. 2016) ("In light of the U.S. Supreme Court's clarification of the due-process limits on general jurisdiction in *Goodyear* and *Daimler,* we read our state's registration statutes as providing a means for service of process and not as conferring general jurisdiction."). Recently, the Supreme Court granted certiorari to resolve the question of whether the due process clause prohibits consent-by-registration statutes, though unfortunately not soon enough to inform this Court's analysis. *See Mallory v. Norfolk S. Ry. Co.*, 266 A.3d 542 (Pa. 2021), *cert. granted*, No. 21-1168 (U.S. Apr. 25, 2022).

In the meantime, the Eleventh Circuit has expressed no reservations about the viability of *Pennsylvania Fire* and recognizes consent by registration as a constitutional basis for general jurisdiction. In *Waite* (a post-*Daimler* decision), the court considered whether a foreign corporation consented to jurisdiction in Florida when it registered to do business and appointed an agent to receive service there. *See Waite,* 901 F.3d at 1319-20. Citing *Pennsylvania Fire* and a related case, the court held that "whether appointing an agent for service of process subjects a foreign defendant to general personal jurisdiction

13

in the forum depends upon the state statutory language and state court decisions interpreting it." *Id.* at 1319. The court's analysis did not acknowledge or attempt to reconcile the friction between *Pennsylvania Fire* and the "at home" test for general jurisdiction. But in any event, this Court must follow *Waite* and *Pennsylvania Fire* as directly applicable precedents from the Eleventh Circuit and the Supreme Court. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions."); *Johnson v. Desoto Cnty. Bd. of Comm'rs*, 72 F.3d 1556, 1559 n.2 (11th Cir. 1996) ("The binding precedent rule affords a court no . . . discretion where a higher court has already decided the issue before it.").

Applied here, *Waite* compels the conclusion that Hyatt Corporation and Playa Management have consented to this Court's general jurisdiction. The Plaintiff shows, and neither Hyatt Corporation nor Playa Management dispute, that both companies were authorized to do business and had registered offices and agents in Georgia when his cause of action arose in 2019 and his lawsuit was filed in 2021. (Pl.'s Br. in Opp'n to Defs.' Mots. to Dismiss, at 8, Exs. C, D, F, & G.) In *Cooper Tire*, the Georgia Supreme Court acknowledged that Georgia's registration statute does not expressly alert foreign corporations that obtaining authorization to do business and

14

maintaining a registered office or agent in Georgia subjects them to general jurisdiction in the state. *See Cooper Tire,* 312 Ga. at 434 (citing O.C.G.A. §§ 14-2-1501(a), -1507). Even so, the general jurisdiction holding in *Klein* (and now again in *Cooper Tire*) has unquestionably provided that notice to out-of-state companies since at least 1992. *Id.* For that reason, the exercise of general jurisdiction over Hyatt Corporation and Playa Management comports with federal due process under *Pennsylvania Fire*.

### B. Hyatt Ziva and Playa Hall

Next, the Plaintiff contends that specific personal jurisdiction exists over Hyatt Ziva and Playa Hall based on their joint venture with Hyatt Corporation and Playa Management. (Pl.'s Br. in Opp'n to Defs.' Mots. to Dismiss, at 10-19.) According to the Plaintiff, because these four companies combined their resources, labor, real property, and funds, each one's actions and contacts can be imputed to the others for the purpose of establishing personal jurisdiction. (*Id.* at 2.) Specifically, the Plaintiff relies on the "transacting business" prong of Georgia's long-arm statute to create jurisdiction over the nonresident Defendants. He claims that Hyatt Corporation, with the permission of Hyatt Ziva and Playa Hall, sent targeted and unsolicited email advertisements to him, and that he only learned about and booked accommodations at Rose Hall Resort through the provided link. (*Id.* at 16 & Ex. A ¶¶ 10-14.) In response, the Defendants argue that they did not engage in a joint venture or purposefully act in Georgia so as to subject

15

themselves to personal jurisdiction here. (Reply Br. in Supp. of Hyatt Corp.'s, Playa Mgmt.'s, and Playa Hall's Mots. to Dismiss, at 5-10.)

As an initial matter, it appears that Hyatt Ziva is not a separate legal entity but is instead only part of Rose Hall Resort's name. (Hyatt Ziva's Br. in Supp. of Hyatt Ziva's Mot. to Dismiss, Ex. A ¶ 10.) Although the Complaint alleges that Hyatt Ziva is a foreign, for-profit company owned by Hyatt Corporation and organized under Jamaica law (Compl. ¶ 7), the Plaintiff's response brief identifies only a company named Hyatt Zilara matching that description. (Pl.'s Br. in Opp'n to Defs.' Mots. to Dismiss, Ex. I.) He has not presented a single business registration form or any other evidence to substantiate the existence of Hyatt Ziva. Accordingly, under Rule 17(b)(3), the Court finds that Hyatt Ziva should be dismissed from this action. Fed. R. Civ. P. 17(b)(3) (for parties that are not individuals or corporations, "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located"); see Jenkins v. Cronic, 2015 WL 520393, at *2 (N.D. Ga. Feb. 9, 2015) ("The State of Georgia recognizes only three classes as legal entities capable of suing or being sued: (1) natural persons; (2) corporations; and (3) quasi-artificial persons that the law recognizes as being capable of bringing suit.").

The Court next considers whether Hyatt Corporation transacted business in Georgia within the meaning of O.C.G.A. § 9-10-91(1), assuming (for now) that those contacts could be imputed to Playa Hall.

16

> [J]urisdiction exists on the basis of transacting business in [Georgia] if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

*Amerireach.com v. Walker*, 290 Ga. 261, 269 (2011) (citation omitted). The Georgia Supreme Court has made clear that "nothing in subsection (1) [of O.C.G.A. § 9-10-91] requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State." *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 279 Ga. 672, 675 (2005). Indeed, courts may assert long-arm jurisdiction over business conducted through postal, telephonic, and Internet contacts. *See ATCO Sign & Lighting Co., LLC v. Stamm Mfg., Inc.*, 298 Ga. App. 528, 533-34 (2009). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 518 (2006).

The only alleged contacts between Hyatt Corporation and Georgia related to the Plaintiff's cause of action are that (1) Hyatt Corporation sent an email advertising Rose Hall Resort to the Plaintiff as part of its rewards program, and (2) the Plaintiff followed a link in the email to reserve his stay at the resort. (Pl.'s Br. in Opp'n to Defs.' Mots. to Dismiss, Ex. A ¶ 10.) But Georgia courts have consistently held that sending emails to Georgia from

17

outside the state, in itself, is insufficient to establish jurisdiction over a nonresident. *See Cath. Stewardship Consultants, Inc. v. Ruotolo Assocs., Inc.*, 270 Ga. App. 751, 754-55 (2004) (collecting cases). Nor does a hotel's maintenance of a reservation website, accessible to Georgia residents, meet "the minimum contacts requirement for a tort case arising out of conduct that subsequently occurred outside the forum state." *Pascarelli v. Koehler*, 346 Ga. App. 591, 597 (2018). In the Court's view, these two contacts do not alone or in combination provide a jurisdictional hook under O.C.G.A. § 9-10-91(1). Or put in doctrinal terms, Hyatt Corporation did not purposefully avail itself of the privilege of doing business in Georgia when it promoted an overseas resort in a generic email to rewards members, including at least one Georgia resident.

The Plaintiff counters that Hyatt Corporation's "affirmative actions of advertising and soliciting within Georgia" make this case analogous to *Day v. Harrah's Hotel & Casino Las Vegas*, 2010 WL 4568686 (S.D. Cal. Nov. 2, 2010). (Pl.'s Br. in Opp'n to Defs.' Mots. to Dismiss, at 17.) There, the court held that a Las Vegas hotel had purposefully directed its activities to California and California residents such that it could reasonably be sued in California court. *See id.* at *5-6. According to the plaintiffs' affidavits, the Las Vegas hotel actively participated in a loyalty rewards program with a San Diego hotel, and both hotels encouraged members through flyers, posters, and brochures to earn points in San Diego and redeem them in Las Vegas. *See id.* at *4-5. Also, the Las Vegas and San Diego hotels advertised the same hot stone massage that

allegedly injured a plaintiff at the Las Vegas property. Unlike in *Day*, no allegations or affidavits suggest that Hyatt Corporation specifically targeted or tailored its Rose Hall Resort advertisement to Georgia customers, but to rewards members located (conceivably) in every state and around the world.

Because Hyatt Corporation's activities in Georgia do not satisfy the long-arm statute, the Court need not address whether those activities can be imputed to Playa Hall as a joint venture partner. The Court also will not defer its jurisdictional determination until trial, as requested by the Plaintiff, since the Plaintiff has failed to make a prima facie case for specific jurisdiction as to Playa Hall. (Pl.'s Br. in Opp'n to Defs.' Mots. to Dismiss, at 6-7.) Accordingly, Playa Hall's Motion to Dismiss is granted for lack of personal jurisdiction.

## IV.   Conclusion

For the foregoing reasons, Defendant Hyatt Corporation's Motion to Dismiss [Doc. 22] is DENIED, Defendant Playa Management USA, LLC's Motion to Dismiss [Doc. 23] is DENIED, Defendant Playa Hall Jamaican Resort Limited's Motion to Dismiss [Doc. 24] is GRANTED, and Hyatt Ziva's Motion to Dismiss [Doc. 25] is GRANTED.

SO ORDERED, this ___7th___ day of June, 2022.

_____
THOMAS W. THRASH, JR.
United States District Judge